**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|                                    |    |                                    |
|------------------------------------|----|------------------------------------|
| JESSICA VEGA,                      | :  |                                    |
|                                    | :  |                                    |
| Plaintiff,                         | :  | Civil Action No.  06-4023 (JAG)    |
|                                    | :  |                                    |
| v.                                 | :  | **OPINION**                        |
|                                    | :  |                                    |
| UNITED STATES OF AMERICA,          | :  |                                    |
|                                    | :  |                                    |
| Defendant.                         | :  |                                    |

**GREENAWAY, JR., U.S.D.J.**

**INTRODUCTION**

Plaintiff Jessica Vega ("Plaintiff") brings this personal injury case against the United States under the Federal Tort Claims Act ("FTCA"), pursuant to 28 U.S.C § 1346(b).  Plaintiff contends that one of Defendant's employees, Austin Sarrosa ("Sarrosa"), a driver for the United States Postal Service ("USPS"), drove his truck negligently, causing it to collide with Plaintiff's vehicle.  At the time of the accident, Plaintiff was the passenger, and Plaintiff's husband, Ramon Vega ("Vega"), was the driver.  Defendant denies any negligence, and counters that Mr. Vega, drove negligently, thus causing the collision.

This Court held a bench trial on October 21, 22, and 30, 2008.  Upon hearing the evidence presented at trial, this Court finds that Plaintiff has not sustained her burden of proof.  Plaintiff has not made the case for a finding of Defendant's negligence.  Judgment will be entered in favor of Defendant.

## BACKGROUND

On January 24, 2006, at approximately 7:30 A.M., on Secaucus Road, in Jersey City, New Jersey, a motor vehicle accident occurred involving a private vehicle, operated by Plaintiff's husband, and a USPS truck, operated by Defendant's employee, Austin Sarrosa.

## THE EVIDENCE AT TRIAL

A.    Plaintiff's testimony

At trial, Plaintiff testified that, on the morning of January 24, 2006, she was riding as a passenger in a vehicle operated by her husband.  (Trial Transcript ("Tr.") 9-10.)[1]  Plaintiff was traveling in the right lane.  (Tr. 9.)  She observed a tractor trailer truck, in the left lane, driving in the same direction as her vehicle.  (Tr. 9-10.)  Plaintiff testified that she saw the truck make a right turn into a parking lot.  (Id.)  Plaintiff stated that truck driver did not use a turn signal or otherwise indicate his intention to make a right turn.  (Tr. 10.)  Upon seeing the truck turning, Plaintiff testified, Plaintiff's husband turned the vehicle to the right, in an effort to avoid a collision, because they "would have went completely under [the truck], if he didn't react to go with the truck and go to the right."  (Tr. 9.)

Nevertheless, there was a collision.  (Tr. 10.)  After the initial collision, Plaintiff testified, the truck driver continued to proceed through the gate, apparently unaware that an accident had

---

[1]This Court heard testimony in the instant action on October 21, 22, and 30, 2008.  The testimony recorded on October 21, 2008 is memorialized as Volume One ("Vol. 1").  The testimony recorded on October 22, 2008 is memorialized as Volume Two ("Vol. 2").  The testimony recorded on October 30, 2008 is memorialized as Volume Three ("Vol. 3").  All transcript references in Sections A and B of this opinion are found in Vol. 1.  All transcript references in Sections C and D of this opinion are found in Vol. 2.  There are no references to Vol. 3 in this opinion.

occcured.  (Tr. 12.)  At this point, Plaintiff's vehicle was lodged in the rear area of the truck, and Plaintiff testified that as the truck pulled forward, the truck pulled the car forward, as well.  (Tr. 11-12, 33.)

  Plaintiff also testified about injuries she suffered as a result of the accident.  (Tr. 17-25.) Plaintiff was a healthy, twenty-two year old, at the time of the accident.  (Tr. 9.)  She never had experienced any injuries to, or pain in the back or legs.  (Tr. 18.)   Plaintiff stated that at the moment of impact, her "body had jolted" and that her "back was hurting [ ] just after that."  (Tr. 17.)  Plaintiff stated that she told her husband and ambulatory personnel about the pain.  (Id.) Plaintiff did not take an ambulance, but rather waited for her mother-in-law to arrive to take Plaintiff and her husband to the hospital.  (Tr. 17-18.)

  At the hospital, Plaintiff underwent an X-ray examination, took pain relief medication, and received instructions to follow-up with her primary care physician.  (Tr. 19, 34.)  For the next few days Plaintiff remained home from work and rested.  (Tr. 20.)  Plaintiff testified that she was in severe pain during those days.  (Id.)  Plaintiff subsequently followed up with her primary care physician, Dr. Carmelo Malazzo, and with Dr. Marie J. DeStefan, a chiropractor.  (Tr. 20-21.)  Dr. DeStefan treated Plaintiff for approximately three months.  (Tr. 22.)  During that time, Plaintiff had a magnetic resonance imaging ("MRI") test.  (Tr. 21.)  Plaintiff testified the MRI results indicated that she suffered from herniated, bulging, and ruptured disks in the back.  (Tr. 22.)  Plaintiff stated that she continues to have pain, and can no longer do her regular physical activities, such as picking up her young son, coaching cheerleading, or going to the gym.  (Id.)

  B. <u>Mr. Ramon Vega's testimony</u>

  Ramon Vega provided, in his testimony, the perspective of the driver, and generally

3

corroborated Plaintiff's account of the accident and of her injuries.  (Tr. 39-55.)  He testified that the truck was approximately one hundred feet in front of his vehicle.  (Tr. 40.)  Mr. Vega observed the truck make a right turn from the left lane into a driveway.  (Id.)  He testified that hit his brakes and turned right, because "there was basically nothing on the right-hand side."  (Id.)  Mr. Vega stated that he turned right instead of left, in order to avoid oncoming traffic.  (Id.)  Mr. Vega further stated that the back of the truck hit the driver's side of his vehicle, and that his car became hooked onto the truck's T-bar.  (Tr. 40-41.)  He testified that, after the initial impact, the truck continued to drive forward, pulling the car behind it.  (Tr. 41.)  Thereafter, the truck came to a stop in front of the closed gate.  (Id.)  After about twenty seconds, Mr. Vega testified, the truck continued moving, pulling his vehicle a couple of feet forward.  (Tr. 42.)

On direct examination, Mr. Vega testified that there was no ice on the road the morning of the accident.  (Tr. 43.)  When pressed during cross-examination, however, Mr. Vega stated that he was, in fact, unsure about the presence of ice.  (Tr. 48.)  Mr. Vega also testified that, before the accident, he was driving the speed limit, and neither he, nor Plaintiff, were using cellular telephones.  (Tr. 51, 54-55.)

C.    Mr. Austin Sarrosa's testimony

Mr. Sarrosa's account of the accident at trial was quite different from that of Plaintiff and her husband.  (Tr. 33-64.)  The United States Postal Service employee testified that, on the day of the accident, he was driving on an assignment to bring trailers to the "portal."[2]  (Tr. 35.)  Mr.

_____

[2]Mr. Sarrosa stated that the "portal" was a USPS scanning area, where trailers were screened for contraband, such as narcotics.  (Tr. 35.)

Sarrosa recalled that the weather was sunny, but cold, and that the road was icy.[3]  (Tr. 39, 44.)

He stated, however, that the ice did not adversely affect his ability to operate of the truck, as the

weight of the truck counteracted the ice.  (Tr. 57.)  He was driving a "snub-nose Mack" truck[4] in

the right hand lane, heading southeast along Secaucus Road.  (Tr. 36, 38.)  Mr. Sarrosa testified

that he was hauling a shorter trailer, and, as a result, was able to drive in and make a turn from

the right lane.[5]  (Tr. 42.)  He further testified that unlike a conventional tractor trailer truck, a

snub-nose truck traveling at an appropriately slow speed could make a right turn from the right

lane, without swinging into the left lane.  (Tr. 60.)  Moreover, Mr. Sarrosa testified, as a matter of

professional practice, "[w]henever you drive a truck, you should be in the right-hand lane always.

Mr. Sarrosa testified that he had slowed his vehicle to approximately ten to fifteen miles

per hour in anticipation of making a right turn into the portal.  (Tr. 41.)  While making the turn,

but before he had pulled through the portal gate, Mr. Sarrosa heard a big bang at the rear of his

truck.  (Id.)  Mr. Sarrosa testified that as soon as he heard the bang, he stopped his truck.  (Tr.

62.)  Thereafter, Mr. Sarrosa put his vehicle in neutral, engaged the emergency brake, and exited

the truck to investigate.  (Tr. 43.)  It was at that moment, Mr. Sarrosa saw that a vehicle had

struck the rear of his truck.  (Id.)  Thereafter, Mr. Sarrosa contacted the USPS dispatcher to call

an ambulance.  (Id.)

---

[3]Mr. Sarrosa, however, testified that he did not see ice on the road until after the accident occurred.  (Tr. 40.)

[4]Mr. Sarrosa explained that this snub-nose Mack truck, a vehicle that measures approximately sixty-five feet in length, was shorter than a full-size tractor trailer truck.  (Tr. 42, 60.)

[5]With a longer trailer, Mr. Sarrosa explained, he would have had to move into the left lane to execute a wide right turn. (Tr. 42.)

5

Mr. Sarrosa testified that, prior to the accident, he had seen a car approximately five hundred feet behind him, traveling at a quick speed.  (Tr. 44.)  He stated that at the point of impact, his truck was no longer moving, but was resting at a complete stop.  (Id.)  Mr. Sarrosa also testified that Plaintiff's husband had attempted to dislodge the Vega's vehicle from the rear of the truck, and that the photographs taken of the accident scene were taken after those attempts failed.  (Tr. 51-52.)

Mr. Sarrosa further testified that, as a matter of professional practice, he performed a checkpoint inspection prior to operating his vehicle, in order to confirm, amongst other things, that the signal and brake lights were in working order.  (Tr. 37.)

Defendant introduced into evidence photographs from the accident scene.  One photograph shows the driver's side front of Plaintiff's vehicle lodged in the right rear bumper of Defendant's truck.[6]  (Def's Ex. 6; see also Pl's Ex. 5.)  Several photographs indicate the presence of ice on Secaucus Road.  (Def. Ex. 3-4 & 8, app. 2, 4.)  Defendant also introduced into evidence a police report of the accident.  (Def's Ex. 1.)  The police report also notes that the road conditions were icy.  (Id.)

D.      Accident Reconstructionist, Mr. Erik Carlsson's testimony

This Court also heard testimony from Defendant's expert witness, Erik Carlsson, an automotive engineer specializing in traffic accident reconstruction.[7]  (Tr. 65-92.)  In preparation

---

[6]Those photographs show that Plaintiff's vehicle struck Defendant's truck almost entirely from the rear, and with such force to bend the truck's T-bar to approximately a forty-five degree angle.

[7]Mr. Carlsson qualifications as an expert witness include thirty years of experience in accident reconstruction consulting, several international engineering licenses, scholarly publications concerning accident reconstruction, a commercial driver's license ("CDL"), and

for his testimony in this case, Mr. Carlsson reviewed the police report, a report prepared by the USPS, and the accident photographs.  (Tr. 70.)  Mr. Carlsson also visited the accident site, at a time after the accident.  (Tr. 87.)

Mr. Carlsson summarized his findings in a report, which he made available to the parties and this Court.  (See Def. Ex. 8.)  In the report, Mr. Carlsson assigned fault to Mr. Vega, and not to Defendant's driver, Mr. Sarrosa.  Specifically, Mr. Carlsson found that, "Mr. Vega failed to pay sufficient attention to the truck/trailer combination, which had to reduce its speed to near zero in order to make the turn off the road, into a driveway."  (Id., at p. 4.)  He further concluded that "Mr. Vega was traveling at too high a speed, considering the icy condition of the road, which made it impossible to slow down fast enough to avoid rear-ending the semi-trailer when he realized it was moving at a very low speed."  (Id.)

At trial, Mr. Carlsson testified, to a reasonable degree of engineering probability, that it was impossible for the USPS truck to have crossed from the left lane into the right lane to make its right turn into the USPS portal.  (Tr. 78.)  He based his conclusion on photographic exhibits, which show the angle of the truck cab to its trailer (Def. Ex. 8, appx. 5), and the position of both vehicles after the collision (Def. Ex. 6).  (Tr. 77.)  Mr. Carlsson testified that Mr. Vega was driving twenty miles per hour faster than the USPS truck, in a limited visibility area[8] with icy road conditions, and was, therefore, unable to slow his vehicle to avoid a collision with

membership in several professional organizations, including the National Association of Professional Accident Reconstruction Specialists.  (Tr. 65-69.)

[8]Mr. Carlsson attributed the limited visibility on Secaucus Road to its slight downhill slope and curvature.  (Tr. 77.)  Coincidentally, Mr. Sarrosa also testified that there was sun glare–another visual impediment–as the vehicles were driving east, towards the sunrise.  (Tr. 44.)

Defendant's truck.  (Id.)

E.     Medical Damages Testimony

This Court also heard live testimony from Plaintiff's treating chiropractor, Dr. Marie J. DeStefan, and Defense witness, orthopedic surgeon, Dr. Wayne Altman, and videotaped testimony from radiologist, Dr. Orestes Sanchez.  Each testified as to Plaintiff's injuries.

## DISCUSSION

This Court finds Defendant's testimony concerning liability, supplemented by photographs and expert witness testimony, more credible than that of Plaintiff and her husband. At the time of the accident, Mr. Sarrosa had four decades of experience in operating large motor vehicles, including the truck involved in the instant action.  (Tr. 33-34, 60-61.)  He has been employed by the USPS as a driver for eleven years.  (Tr. 34.)  He routinely operated the same truck along the same route (Tr. 60-61), and there was no evidence that Mr. Sarrosa operated his vehicle in a different manner than he had every other time he performed his shift.

Although Plaintiff and her husband concur in their recollection of the accident, their account does not comport with the engineering science of the operation of motor vehicles.  The photographs depicting the position of Plaintiff's vehicle and the postal truck support Defendant's explanation that Mr. Sarrosa was turning from the right lane when his truck was rear-ended by Plaintiff's vehicle.  Plaintiff's testimony also reveals a lack of awareness of the icy road conditions, as evidenced by the photographic exhibits.  Defendant provided credible testimony, undercutting Plaintiff's allegation of negligence.

## FINDINGS OF FACT

Having heard the trial testimony of Plaintiff, Jessica Vega, Mr. Ramon Vega, Mr. Austin

8

Sarrosa, Mr. Erik Carlsson, and three medical personnel, this Court now makes the following findings of fact and conclusions of law:

1.    The accident that gives rise to this litigation occurred on January 24, 2006, at approximately 7:30 A.M.  Austin Sarrosa was employed by the United States Postal Service.  While acting within the scope of his employment as a truck driver, he drove a USPS vehicle, in the easterly direction on Secaucus Road in Jersey City, New Jersey.  Mr. Sarrosa was driving in the right lane.  Secaucus Road is a four-lane roadway, with two lanes going in either direction.

2.    Before the accident, Plaintiff was also traveling east, in the right lane, on Secaucus Road, in a vehicle operated by her husband.

3.    Mr. Sarrosa observed Plaintiff's vehicle approximately five hundred feet behind his truck.

4.    Mr. Sarrosa observed Plaintiff's vehicle traveling "too fast" down Secaucus road.  (Vol. 2, Tr. 44)

5.    The vehicle operated by Mr. Sarrosa was a snub-nose Mack truck.  The truck measures approximately sixty-five feet in length.

6.    The brakes and lights on the USPS truck were operational.

7.    At a time before the accident, Mr. Sarrosa proceeded to make a right-hand turn off of Secaucus Road, from the right lane.

8.    Mr. Sarrosa slowed his vehicle to approximately ten or fifteen miles per hour, in anticipation of making the turn.

9.    Mr. Sarrosa used his turn signal to indicate his intention to make the right turn into the portal.  Mr. Sarrosa's brake lights were also functioning and illuminated.

10.     There was limited visibility on Secaucus Road.  It was a sunny day; the road is curvy and sloping.

11.     The road conditions were icy.

12.     Mr. Vega was driving approximately twenty miles per hour faster than Mr. Sarrosa.

13.     Mr. Vega was initially unaware of the traffic in front of him.  When he became aware of the obstruction, Mr. Vega was unable to slow his car, so as avoid a collision with Defendant's slowed and turning vehicle.

14.     The two vehicles collided.

15.     Both Mr. Sarrosa and Mr. Vega had a duty to exercise a reasonable degree of care while driving.  That duty includes an awareness of traffic conditions around one's vehicle and obstructions in front of one's vehicle.  The duty also requires drivers to exercise caution when road conditions are sub-optimal, as in the case of sun glare or icy roads.

16.     Plaintiff's recollection of the accident does not comport with the physical depictions of the accident scene, as evidenced through both Plaintiff and Defendant's exhibits.

## CONCLUSIONS OF LAW

1.     This Court has jurisdiction over this matter, pursuant to 28 U.S.C. § 1346(b), since the United States is the defendant and Plaintiff alleges a negligent act on the part of a government employee acting within the scope of his employment.  The FTCA provides a remedy against the United States for injuries caused by the "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. §§ 1346(b), 2679(a).  In analyzing this claim, this Court must apply the law of the place of the occurrence, New Jersey.

2.      In order to prevail, Plaintiff bears the burden of proving negligence on the part of the defendant.  <u>Buckelew v. Grossbard</u>, 87 N.J. 512, 525 (1981).  "The plaintiff must introduce evidence which provides a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of the defendant was a cause in fact of the injury."  <u>Fedorczyk v. Caribbean Cruise Lines</u>, 82 F.3d 69, 74 (3d Cir. 1996) (applying New Jersey law).

3.      "Negligence is the failure to use that degree of care, precaution and vigilance which a reasonably prudent person would use under the same or similar circumstances.  It includes both affirmative acts which a reasonably prudent person would not have done and the omission of acts or precautions which a reasonably prudent person would have done or taken in the circumstances."  N.J. Model Civil Charges 5.10.  "As the danger becomes greater, the actor is required to exercise caution commensurate with it."  <u>Harpell v. Pub. Serv. Coord. Transp.</u>, 20 N.J. 309, 316 (1956).

4.      Mr. Sarrosa exercised a reasonable degree of care in operating his vehicle: he made a right turn from the right lane; he used his turn signal and his brake lights were functioning.

5.      Mr. Vega did not exercise a reasonable degree of care in operating his vehicle: he was driving at least the speed limit although the road was icy, and there was limited visibility on the road; he failed to notice that a large truck slowed and turning directly in front of him.

6.      The accident could not have occurred as Plaintiff claims.  If, in fact, Mr. Vega was surprised by the truck turning from the left lane, the impact should not have been at the

very rear of the truck.  Rather, the impact would have been closer to the front or middle of the intruding vehicle.

7.      Plaintiff has not introduced sufficient evidence to provide a reasonable basis for the conclusion that it was more likely than not that the negligent conduct of Mr. Sarrosa was a cause in fact of the accident.

8.      Plaintiff has failed to prove negligence.[9]

9.      Judgment shall be entered in favor of Defendant.

An appropriate Order is attached.


                                             S/Joseph A. Greenaway, Jr.
                                             JOSEPH A. GREENAWAY, JR., U.S.D.J.

Dated: November 13, 2008

---

[9]Because Plaintiff has not carried her burden of proof as to negligence, this Court need not discuss damages as they might relate to Plaintiff's injuries.

12